UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**TONIA DENISE WILLIAMS,**

     **Plaintiff,**

   v.

**ANDREW SAUL,
Commissioner of Social Security,**

     **Defendant.**

Case No. 2:18-cv-13145
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Tonia Denise Williams for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.   PROCEDURAL HISTORY**

On December 20, 2013, Plaintiff filed her application for benefits, alleging that she has been disabled since October 30, 2012. R. 193–94, 208, 307–15. Plaintiff's application was denied initially and upon reconsideration. R. 178–92, 194–207, 211–15. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 227–29. Administrative Law Judge Paul R. Armstrong ("ALJ") held a hearing on May 1, 2017, at which Plaintiff, who was represented by

counsel, appeared and testified, as did a vocational expert. R. 59–109. In a decision dated June 21, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act since December 20, 2013, the date the application was filed. R. 41–49. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 22, 2018. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 7, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 6.[1] On March 12, 2020, the case was reassigned to the undersigned. ECF No. 22. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc.*

---

[1] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

*Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

3

*Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

4

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.   Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the

burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so,

then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.  ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 41 years old on the date her application for benefits was filed. R. 48. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 20, 2013, the date the application was filed. R. 43.

At step two, the ALJ found that Plaintiff's right shoulder and feet degenerative joint disease, degenerative disc disease, and carpal tunnel syndrome were severe impairments. *Id.* The ALJ also found that Plaintiff's diagnosed chronic obstructive pulmonary disease, affective disorder, and anxiety were not severe. R. 44–45.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 45–46.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 46–48. The ALJ found that this RFC permitted the performance of Plaintiff's past relevant work as a cafeteria food service worker and security guard. R. 48.

Alternatively, at step five, the ALJ also found that a significant number of jobs–*i.e.*, approximately 135,093 jobs as a cleaner/housekeeper; approximately 283,967 jobs as a marker; and approximately 48,184 jobs as a ticket taker– exist in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 48–49. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act since December 20, 2013, the date on which her application was filed. R. 49.

Plaintiff disagrees with the ALJ's findings at steps two, three, four, and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 19; *Plaintiff's Reply*, ECF No. 21. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 20.

## IV. DISCUSSION

Plaintiff raises several challenges to the ALJ's decision, including her contention that the ALJ erred when determining at step two that, *inter alia*, Plaintiff's mental impairments were not severe. *Plaintiff's Memorandum of Law*, ECF No. 19, pp.27 – 31; *Plaintiff's Reply*, ECF No. 21, pp. 1–4. This Court agrees.

At step two, an ALJ determines whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "An ALJ's failure to consider the severity of an impairment or an ALJ's determination that an impairment is non-severe is not ordinarily dispositive at Step Two if the ALJ has found at least one severe impairment. This is because the ALJ is required to consider the combined effects of all impairments—regardless of severity—at Steps Three through Five." *Taylor v. Comm'r of Soc. Sec.*, No. 16-CV-05033, 2018 WL 2298358, at *8 (D.N.J. May 21, 2018) (citing, *inter alia*, 20 C.F.R. § 416.923; *Salles v. Comm'r*

8

*of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (finding harmless error where ALJ erred in finding at Step Two that some, but not all, of claimant's impairments were not severe)); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding.").

Here, the ALJ concluded at step two that Plaintiff suffered only severe physical impairments: right shoulder and feet degenerative joint disease, degenerative disc disease, and carpal tunnel syndrome. R. 43. The ALJ also found that Plaintiff's other diagnosed conditions, including the mental impairments of affective disorder and anxiety, were not severe. R. 44–45. The ALJ specifically found, *inter alia*, that Plaintiff's "medically determinable mental impairments of affective disorder and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere[,]" R. 44, reasoning as follows:

> In making this finding, the undersigned has considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four areas of mental functioning are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering, or applying information. In this area, the claimant has mild limitation. During her April 2014 consultative examination [by Victoria C. Miller, Ph.D.], the claimant remembered three out of three objects immediately and after five minutes (Exhibit 9F [R. 660–62]). The claimant remembered six digits forward and four digits backward (Exhibit 9F [R. 660–62]). In a hospitalization in September of 2014 the claimant had intact memory despite testing positive for cocaine, opiate and marijuana (Exhibit 56F/4-5). In October 2015, November 2015, January 2016, August 2016, and October 2016, the claimant showed logical thoughts and intact memory (Exhibit 51F/7-41).
>
> The next functional area is interacting with others. In this area, the claimant has no limitation. In her function report, the claimant reported that she goes out to dinner with others (Exhibit 8E). The claimant was never fired or laid off from a job because

of problems getting along with other people (Exhibit 8E). The claimant testified that she gets along with family, but no longer sees friends (hearing testimony). In February 2014, the claimant had a three-day hospitalization for anxiety (Exhibit 28F/4). During her April 2014 consultative examination [with Dr. Miller], the claimant made good eye contact (Exhibit 9F [R. 660–62]). In January 2015, the claimant presented with anxiety (Exhibit 30F/1). In October 2014, the claimant reported sadness, but a mental status examination showed the claimant was cooperative (Exhibit 51F/7-8). In January 2016, the claimant showed a stable mood (Exhibit 51F/21).

The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has mild limitation. In her function report the claimant reported she can pay attention for 10 minutes (Exhibit 8E). The claimant testified to difficulty paying attention (hearing testimony). In March 2014, the claimant was alert and oriented times three (Exhibit 11F/3). During her April 2014 consultative examination [by Dr. Miller], the claimant was fully oriented (Exhibit 9F [R. 660–62]). [I]n her September hospitalization, the claimant's attention span was good, despite testing positive for cocaine, opiate and marijuana (Exhibit 56F/4-5). In October 2015, November 2015, January 2016, August 2016, and October 2016, the claimant showed intact attention and concentration (Exhibit 51F/7-41).

The fourth functional area is adapting or managing oneself. In this area, the claimant has no limitation. In her function report, the claimant reported that she does not prepare meals (Exhibit 8E). The claimant will wipe the sink and do laundry with help (Exhibit 8E). The claimant shops, pays bills, reads, and watches television (Exhibit 8E). During her April 2014 consultative examination [by Dr. Miller], the claimant reported she can generally care for herself (Exhibit 9F [R. 660–62]).

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, they are nonsevere (20 CFR 416.920a(d)(l)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

As for the mental opinion evidence, the state psychological consultants found the claimant was limited to unskilled work with limited social interactions (Exhibit 1A, Exhibit 3A). However, their opinions are contradicted by the stable mental status examinations in the record, her reported activities of daily living, and the claimant's

10

stable functioning during her consultative examination (Exhibit 9F [R. 660–62], Exhibit 51F). Therefore, their opinions are granted little weight.

R. 44–45.

Plaintiff disagrees with this finding, arguing, *inter alia*, that the ALJ seeks to minimize her severe mental impairments by omitting some of the findings of the consultative examiner, Dr. Miller. *Plaintiff's Memorandum of Law*, ECF No. 19, pp. 27–28; *Plaintiff's Reply*, ECF No. 21, p. 2. Plaintiff also argues that the ALJ improperly failed to consider her mental impairments at step four when crafting the RFC determination and at step five when posing hypothetical questions to the vocational expert. *Plaintiff's Memorandum of Law*, ECF No. 19, pp. 35–38. This Court agrees.

Victoria C. Miller, Ph.D., performed a consultative psychological examination of Plaintiff in April 2014. R. 660–62. Plaintiff reported a history of depression and anxiety, including two hospitalizations for suicidal ideation. R. 660. At the time of the examination, she was undergoing daily outpatient psychotherapy. *Id.* She denied a history of substance abuse or use of street drugs. R. 661. On examination, Plaintiff was alert and fully oriented. *Id.* According to Dr. Miller, Plaintiff

> was able to name the current President, but stated the former was Clinton. She could spell world forward and backwards, and could count by 3's only to 9 due to diminished concentration. However, she could accurately multiply 9 x 6, and she could remember 3 objects immediately and after 5 minutes, could recall those objects. She could remember 6 digits forward and could reverse 4 digits. Mood was dysthymic with congruent affect, and the claimant was intermittently teary. She has fair judgment, insight, and impulse control with no evidence of any thought disorder. No suicidal thinking or homicidal impulses.

R. 661. In describing Plaintiff's activities of daily living, Dr. Miller noted, "She has chronic memory problems and limitations with concentration." *Id.* Dr. Miller diagnosed "[severe m]ajor

11

depressive disorder with anxious distress"; Plaintiff's prognosis was characterized as "guarded." R. 662.

As set forth above, the ALJ highlighted those portions of Dr. Miller's report that supported the ALJ's findings that Plaintiff had no or only mild limitations in the four areas of mental functioning. R. 44–45. For example, when finding that Plaintiff had mild limitations in the functional areas of understanding, remembering, or applying information and in concentration, persistence, or pace, the ALJ stated that Dr. Miller noted that Plaintiff remembered three out of three objects immediately and after five minutes; remembered six digits forward and six digits backward; and was fully oriented. R. 44. However, the ALJ wholly failed to mention to Dr. Miller's finding that Plaintiff "has chronic memory problems and limitations with concentration." R. 661; *see also* R. 44.

This Court concludes that the ALJ erred when he relied on only those portions of Dr. Miller's report that supported the ALJ's step two findings, while ignoring those portions of Dr. Miller's report that contradicted the ALJ's findings in this regard. *See Segal v. Comm'r of Soc. Sec.*, No. CV 19-8839, 2020 WL 2111229, at *6–7 (D.N.J. May 4, 2020) (remanding where "the Court finds that the ALJ nonetheless erred in his treatment of medical evidence in the record: although the ALJ did not entirely ignore treatment notes from Plaintiff's providers, he selectively cited portions of these notes, rather than addressing the conflicting evidence within these records"); *Pastuch v. Comm'r of Soc. Sec.*, No. CV 17-989, 2018 WL 2018063, at *9 (D.N.J. May 1, 2018) ("The ALJ must not ignore the opinions of treating professionals or cherry pick evaluations, diagnostics, or opinions that support a particular conclusion."); *Cintron v. Comm'r of Soc. Sec.*, No. 2:13-CV-7125, 2014 WL 6800613, at *10 (D.N.J. Dec. 2, 2014) ("An ALJ cannot rely on portions of documents from the record without also refuting 'the statements made

12

therein that contradict his findings.'") (quoting *Cadavid v. Comm'r of Soc. Sec.*, No. CIVA 12–7214, 2014 WL 839453, at \*9 (D.N.J. Feb.26, 2014)); *cf. DeJesus v. Colvin*, No. CIV. 14-4798, 2015 WL 4902159, at \*8 (D.N.J. Aug. 17, 2015) ("Adopting only portions of an opinion that support the ALJ's RFC findings while failing to address those portions that contradict them . . . will not suffice as an adequate explanation.") (citations omitted).

In addition, the ALJ did not specifically either assign weight to or explain his evaluation of Dr. Miller's report. *See generally*, R. 44–47. "An ALJ must explain the weight given to physician opinions. . . ." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3rd Cir. 2011)(citing 20 C.F.R. § 404,1527(f)(2)(ii)). Moreover, the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter*, 642 F.2d at 705). Although an ALJ "still may choose whom to credit but [the ALJ] 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Nazario v.*

13

*Comm'r Soc. Sec.*, 794 F. App'x 204, 209–10 (3d Cir. 2019) ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). Here, without an explanation as to what weight the ALJ gave Dr. Miller's opinion and why he ignored or implicitly rejected Dr. Miller's findings that Plaintiff had chronic memory problems and limitations in concentration, coupled with the ALJ's reliance on other portions of Dr. Miller's opinion, the Court cannot conclude that substantial evidence supports the ALJ's findings at step two as to Plaintiff's mental impairments. *See Cotter*, 642 F.2d at 704–05; *Fargnoli,* 247 F.3d at 42; *Morales*, 225 F.3d at 317; *Sutherland*, 785 F. App'x at 928.

"Generally, an error at step two is harmless because it is a threshold test. . . . As long as one impairment is found to be severe, all medically determinable impairments are considered at subsequent steps, including non-severe impairments." *Herring v. Colvin*, 181 F. Supp. 3d 258, 276–77 (M.D. Pa. 2014) (citations omitted); *see also Swaney v. Saul*, No. CV 18-1530, 2020 WL 529602, at *2 (W.D. Pa. Feb. 3, 2020) ("Rather, the ALJ proceeds beyond step two and, in so doing, an ALJ makes an RFC determination taking into consideration all impairments, including any impairment that is not severe. Thus, an ALJ will proceed to consider a plaintiff's severe and non-severe impairments in the evaluation process in determining a plaintiff's [RFC]."); *Taylor*, 2018 WL 2298358, at *8. As set forth above, "[h]owever, an error can harm the claimant if an

impairment is improperly found to be not medically determinable or when non-severe impairments are not considered at later steps." *Herring*, 181 F. Supp. 3d at 277.

Here, the Court cannot conclude that the ALJ's error at step two regarding Plaintiff's mental impairments was harmless. The ALJ never mentioned Plaintiff's mental impairments again after step two. *See generally* R. 45–49. Plaintiff's mental impairments therefore "were effectively screened out of the analysis at step two. As a result, the potential effect of the [mental] impairments, alone or in combination with each other and the [physical] impairments, was not analyzed at step three or subsequently." *Melendez v. Colvin*, No. CV 15 -3209, 2016 WL 4718946, at *4 (D.N.J. Sept. 8, 2016); *see also Swaney*, 2020 WL 529602, at *2 (stating that "an ALJ must consider all of a claimant's impairments, including non-severe impairments" when making an RFC determination and remanding where "the ALJ fails to recognize, mention or discuss Plaintiff's mental impairments" at later steps); *Taylor*, 2018 WL 2298358, at *4, 9 (remanding where the ALJ effectively "'screened out' of the remaining disability evaluation process at Step Two all of Plaintiff's mental impairments"). Accordingly, based on this record, the Court cannot conclude that substantial evidence supports the ALJ's decision. It may be that, on remand, the ALJ will again find that Plaintiff's mental impairments are not severe and ultimately conclude that Plaintiff is not disabled. However, at this juncture, the ALJ must explain his treatment of the opinion of Victoria C. Miller, Ph.D., the consultative examiner, and consider Plaintiff's mental impairments beyond step two. This Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner

for further consideration of Plaintiff's mental impairments and of the opinion articulated by Dr. Miller.[2]

## V.     CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  March 18, 2021                                         *s/Norah McCann King*
                                                                              NORAH McCANN KING
                                                                              UNITED STATES MAGISTRATE JUDGE

---

[2] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff', the Court need not and does not consider those claims.